UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO,         :
ANTHONY PIROZZI, DOMINICK MARROCCO,       :
ANTHONY D'AQUILA, FRANK FINKEL, JOSEPH    :
FERRARA, MARC HERBST, THOMAS PIALI, and   :    09 Civ. 1067 (DLC)
DENISE RICHARDSON, as a Trustees and      :
fiduciaries of Local 282 Welfare,         :    OPINION AND ORDER
Pension Annuity, Job Training and         :
Vacation and Sick Leave Trust Fund,       :
                                          :
                   Plaintiffs,            :
        -v-                               :
                                          :
LAWS CONSTRUCTION CORP.,                  :
                                          :
                   Defendant.             :
----------------------------------------X
Appearances:

For the plaintiffs:
William K. Wolf
Douglas L. Sanders
Friedman & Wolf
1500 Broadway, Suite 2300
New York, NY 10036

For the defendant:
Paul T. Vink
Andrew Greene & Associates, P.C.
202 Mamaroneck Avenue
White Plains, NY 10601

DENISE COTE, District Judge:

    Plaintiffs, the trustees and fiduciaries ("Plaintiffs") of

the Local 282 Welfare, Pension, Annuity, Job Training, and

Vacation and Sick Leave Trust Funds ("Benefit Funds"), bring

suit pursuant to the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001 et seq., against the defendant,

Laws Construction Corp. ("Laws"), a signatory to a collective

bargaining agreement ("CBA") with Local 282 of the International Brotherhood of the Teamsters (the "Union"), for non-payment of contributions to the Benefit Funds.  The Plaintiffs have moved for summary judgment on their claim.  For the following reasons, the motion is granted.

BACKGROUND

A. Laws and Jo-Di

Laws is a general contractor specializing in road and highway construction and reconstruction, excavating, commercial construction, and construction management.  Laws does not maintain trucks for the disposal of excess excavated material, have the necessary permits for waste material hauling, or maintain relationships with disposal sites, so it issues purchase orders to outside companies to fill those roles.

In 2006, Laws was hired by the Dormitory Authority of the State of New York ("DASNY") for work on a construction project in Queens, New York (the "DASNY Project").  Pursuant to its contract with DASNY, Laws was required to engage the services of a woman- or minority-owned business.  To fulfill this requirement, on November 16, 2006, Laws issued a purchase order for trucking services from Jo-Di Trucking, Inc. ("Jo-Di"), a woman-owned business approved by DASNY, on an as-needed basis.[1]

---

[1] The Plaintiffs object to three exhibits offered by the defendant in opposition to the motion on the ground that Laws

The purchase order reflects the cost to Laws of renting trucks with drivers for eight hours, as well as the price for each hour of overtime.  On the DASNY Project, Jo-Di was responsible for hauling away the material excavated by Laws.  Laws employees loaded the trucks with debris, and Jo-Di employees drove the trucks away from the work site.  The Jo-Di employees were not on Laws's payroll.

The DASNY Project was a "prevailing wage job," meaning that all employees on the job site were required to be paid wages and benefits (or supplemental income) equal to the current union wage and benefit rate, whether the employees are members of a union or not.  See N.Y. Lab. Law § 220.  Jo-Di was responsible for paying its employees the prevailing wage.

B. Heavy Construction and Excavating CBA

At all times relevant to this litigation, Laws was a signatory to the CBA, the full name of which is the Local 282 New York City Heavy Construction & Excavating Contract 2006-

---

did not produce them in response to the Plaintiffs' discovery requests.  In response to the Plaintiffs' document requests, Laws stated that "responsive documents will be produced as they are kept in the ordinary course of business at the office of the defendant . . . upon reasonable notice in accordance with the provisions of FRCP Rule 34."  Laws represents that the Plaintiffs never came to inspect and make copies of the documents they requested.  The Plaintiffs do not dispute that they were given access to the defendant's records, including these three exhibits.  If the Plaintiffs were unhappy with the manner in which the defendant participated in discovery, the time to raise those objections was prior to the fact discovery cutoff on October 15.

2009.  In the CBA, the employer recognizes that the union is the "exclusive bargaining representative . . . of all automobile chauffeurs and euclid and turnapull[2] operators employed by the employer."  "Heavy construction and excavating work" is defined as the "construction of engineering structures and building foundations, exclusive of the erection of building superstructures."  The CBA requires, among other things, that Laws pay into the Benefit Funds dollar amounts defined in the CBA for each hour worked in employment covered by the CBA.[3]

The CBA places certain restrictions on Laws's ability to rent "outside" trucks, i.e., trucks not owned by Laws, and to hire subcontractors.  In particular, § 6(D) of the CBA prohibits

---

[2] Though undefined in the CBA, a "euclid" is understood to be a piece of heavy equipment for earthmoving, one example of which would be a dump truck.  A "turnapull" is also understood to be a piece of heavy earthmoving equipment.

[3] Each of the five Benefit Funds requires payments based on slightly different criteria.  To the Welfare Fund, "[t]he Employer shall contribute for each hour worked" approximately nine dollars.  To the Pension fund, "the Employer shall contribute Seven Dollars . . . for each hour worked under this Agreement, during the regular workweek (Monday-Friday), up to a maximum of forty (40) hours."  Additionally, "[c]ontributions to the Welfare, and/or Pension Fund for work performed on Saturday or Sunday will be a maximum of eight (8) hours for each day.  Hours worked shall include paid holiday hours and paid vacation hours, up to a maximum of eight (8) hours per day."  The employer contributes to the Annuity Fund for "each hour paid at the straight time rate," except that for each hour paid at a premium rate, the employer must make a contribution at the premium rate.  Contributions to the Job Training Fund are for "every hour paid for, up to a maximum of forty (40) hours per Employee per week."  Contributions to the Vacation and Sick Leave Fund are payable based on "each hour worked."

employers from hiring outside trucks or equipment "unless all his available suitable trucks and equipment are in use."  If that is the case, the employer "shall hire only from truck or equipment suppliers whose drivers receive wages, working conditions, <u>benefits</u> and standards of employment no less favorable than those contained herein."  (Emphasis supplied.) Additionally, if an employer hires outside trucks or equipment, it is required to notify the Benefit Funds on a weekly basis of the "identity and address of the truck or equipment supplier, the number of trucks supplied and the hours of work involved for each truck."

The CBA also restricts subcontracting.  Pursuant to § 7 of the CBA, employers who subcontract any work covered by the CBA must submit monthly reports to the Union of "all hours worked for each Employee, in all classifications covered by this Agreement, whether that work is performed by an Employee of the Employer or an Employee of a subcontractor, or any subcontractor of a subcontractor."  The CBA does not define "Employee"[4] or "subcontractor."

The provisions of the CBA concerning renting outside trucks and hiring subcontractors also describe the consequences of not

---

[4] The Benefit Funds are operated pursuant to the terms of the Agreement and Declaration of Trust (the "Trust Agreement").  The Trust Agreement defines "Employees" as "all Employees covered by and who fulfill the conditions of the Collective Bargaining Agreements in effect between the Employers and the Union."

complying with the terms of the CBA.  With respect to hiring

outside trucks, a supplier that does not provide the wages,

working conditions, benefits, and standards of employment

required by the CBA is "not complying."  In that case, if the

Union notifies the employer that the truck supplier is out of

compliance, "the Employer . . . may be responsible for such non-

compliance" beginning two days after the Union notifies the

employer.  With respect to subcontracting, non-compliance means

that a subcontractor fails to pay the wages or Benefit Funds

contributions required by the CBA.  In that case, the "Employer

shall be responsible" for any non-compliance starting two days

after the Union informs the Employer.  It is undisputed that

Laws did not notify the Union or the Benefit Funds of its hiring

of Jo-Di or the hours worked by Jo-Di employees.

     The Trust Agreement gives the Plaintiffs the authority to

audit any signatory employer's records and books in order to

determine compliance with the payment of contributions to the

Benefit Funds.  The Trust Agreement also defines the interest,

attorney's fees, auditor's fees, and liquidated damages that

will be due on unpaid contributions.

C. Procedural History

     The Plaintiffs commenced this action on February 5, 2009,

seeking to compel an audit of Laws's books and records to

determine whether any contributions were due and owing, and, if

6

amounts were found to be due, payment of those amounts and the statutory damages arising from non-payment.  The case was originally assigned to the Honorable Denny Chin.  On June 11, the Plaintiffs filed a motion for entry of default judgment. Laws appeared in the action and, with the permission of the Court, filed an answer on August 25, 2009.

In September 2009, the Plaintiffs completed an audit of Laws's books and records for the period from April 2007 through March 2009.  The audit revealed approximately 2,000 hours of work for which Laws had not made benefits contributions.  The audit report states that "[Laws]'s books and records indicate that the company hired non-union outside trucks from Jo-Di Trucking, Inc."  Approximately 1,800 hours[5] of the 2,000 hours for which benefits were not paid are attributed to "Non Union Outside Truck Hire" by Jo-Di.

Based on the audit, the Plaintiffs demanded unpaid contributions, interest, auditing fees, and attorney's fees. Laws did not pay the Plaintiffs' demand.  On May 12, 2010, the case was reassigned to this Court.  Discovery concluded on October 15.  On November 5, the Plaintiffs filed a motion for summary judgment seeking $54,092 in contributions, $39,408 in interest and additional statutory interest, $54,861 in auditing

---

[5] The hours attributable to Jo-Di work are 1,822.5 for the Welfare, Pension, Job Training, and Vacation Trusts, and 1,833.75 for the Annuity Fund.

fees and attorney's fees, and $53 per day as interest and
additional statutory interest from the day of the audit until
the day of judgment.  The motion was fully submitted on December
8.[6]

                          DISCUSSION

     Summary judgment may not be granted unless all of the
submissions taken together "show that there is no genuine issue
as to any material fact and that the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The
moving party bears the burden of demonstrating the absence of a
material factual question, and in making this determination, the
court must view all facts "in the light most favorable" to the
nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d
Cir. 2008).

     Once the moving party has asserted facts showing that the
non-movant's claims cannot be sustained, the opposing party must
"set out specific facts showing a genuine issue for trial," and
cannot "rely merely on allegations or denials" contained in the
pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554
F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere

---

[6] Laws argues that it is entitled to summary judgment in its
favor on whether any contributions are due for the hours
attributable to work by Jo-Di, but it did not make a cross
motion for summary judgment.

speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

"[A] motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning."  Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008).  Thus, "[t]he initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties."  Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603 F.3d 169, 180 (2d Cir. 2010) (citation omitted).  "Whether the contract is unambiguous is a question of law for the court."  Id. (citation

omitted).  See also Adirondack Transit Lines, Inc. v. United
Transp. Union, 305 F.3d 82, 85 (2d Cir. 2002) (applying this
standard to a collective bargaining agreement).

A. Contributions to Benefit Funds

Under ERISA,

> [e]very employer who is obligated to make
> contributions to a multiemployer plan under
> the terms of the plan or under the terms of
> a collectively bargained agreement shall, to
> the extent not inconsistent with law, make
> such contributions in accordance with the
> terms and conditions of such plan or such
> agreement.

29 U.S.C. § 1145.  An employer must make benefits contributions
for all workers covered by the collective bargaining agreement,
even if some workers are not members of the union.  See Diduck
v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 274-75, 283,
285 (2d Cir. 1992).  Section 1145 "establishes an independent
federal right of action distinct from the contract on which the
duty to contribute is based."  Trustees of the Nat'l Automatic
Sprinkler Indus. Pension Fund v. Fairfield Cnty. Sprinkler Co.,
243 F.3d 112, 115 (2d Cir. 2001) (citation omitted).  In cases
in which a fiduciary brings suit to enforce § 1145 and judgment
is entered in the fiduciary's favor, the benefit plan is
entitled by statute to the unpaid contributions, interest,
additional interest, and reasonable attorney's fees and costs.
29 U.S.C. § 1132(g)(2).

An employer that has knowingly signed an agreement that requires it to make benefits contributions cannot escape liability for those contributions by raising defenses that "call into question the union's ability to enforce the contract as a whole."  DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 653 (2d Cir. 1994) (citation omitted).  Thus, the only defenses recognized by courts to claims against employers for unpaid benefits contributions are that the contributions demanded are not "in accordance with the terms and conditions" of the CBA (i.e., not required pursuant to § 1145 because they were not part of any contractual obligation), "that the pension contributions themselves are illegal," or "that the collective bargaining agreement is void (not merely voidable)."  Id. (citation omitted).

B. Non-Jo-Di Hours

The Plaintiffs argue that they are entitled to summary judgment with respect to all of the hours identified as being underreported in the audit.  As noted, approximately 1800 of the hours identified by the audit relate to hours worked by Jo-Di. The remaining hours are attributable to differences between the payments reported by Laws on behalf of its own employees and the amounts determined to be due by the Benefit Funds.  The audit

identifies five of Laws's employees[7] with respect to whom small differences were discovered between the amount of contributions Laws paid and what the Benefit Funds determined to be due, some of which consisted of overpayments by Laws. The differences are calculated separately for each of the Benefit Funds based on the criteria established in the CBA.[8]

The Plaintiffs are entitled to summary judgment with respect to this smaller category of hours concerning five of the defendant's employees. Laws has not presented evidence that creates any question of material fact with respect to the hours shown to be underreported in the audit. The audit was conducted in accordance with the Trust Agreement and by an accountant with experience performing more than 2,000 such audits. It is a reliable account of the contributions due to the Benefit Funds. Laws argues only that it is "impossible" based on the way Laws reports its hours to the Benefit Funds for the actual reported hours for any given employee to vary by Benefit Fund. Laws misunderstands the way that the Benefit Funds calculate hours for each of the Benefit Funds. As described in note 3, supra, in some cases the hours are calculated based on each hour paid, whereas in other instances, the hour figure is based on hours

---

[7] The hours of thirteen Laws employees were audited, but differences were only discovered with respect to five of them.

[8] See note 3, supra.

worked during the regular work week.  Laws also argues that the auditors were "incompetent" and "disorganized" and never reviewed the Laws General Accounting Ledger after demanding it, but these arguments, unsupported by any evidence or specificity, are insufficient to defeat a motion for summary judgment.

C. Jo-Di Hours

The Plaintiffs argue that Laws owes the contributions to the Benefit Funds for the hours worked by Jo-Di employees performing trucking and hauling work because Jo-Di was a subcontractor, and the CBA holds the employer responsible for the contributions by subcontractors.  The Plaintiffs have shown that they are entitled to summary judgment on the hours worked by Jo-Di because Laws was responsible for compliance with the CBA with respect to those hours.

Laws subcontracted the hauling work to Jo-Di.  Although the term "subcontractor" is not defined in the CBA, the ordinary definition of that word encompasses the relationship between Laws and Jo-Di.  A subcontract is "a secondary contract made by a party to the primary contract for carrying out the primary contract, or a part of it."  Black's Law Dictionary (9th ed. 2009).  In the "Contractor's Utilization Plan" that it provided to DASNY, Laws listed Jo-Di as a woman-owned business entity that it intended to hire for the DASNY Project for "trucking." The value of the proposed award was $300,000 (of the nearly

13

$16.5 million dollar contract amount).  Laws's contract with DASNY required it to engage the services of a woman- or minority-owned business to perform work on its DASNY contract. Laws used Jo-Di to satisfy both its need to haul away the material it excavated and its contractual commitment to hire a woman-owned business.  DASNY approved Jo-Di as a woman-owned business and Jo-Di hauled excess material from the DASNY Project site for Laws.  As such, the purchase order for Jo-Di's services is a secondary contract made by a party to the primary contract for carrying out part of the primary contract.  Indeed, Laws's Fed. R. Civ. P. 30(b)(6) witness, Betty Bruno, repeatedly referred to Jo-Di as a "subcontractor" while discussing Laws's position that no benefit contributions were due on behalf of Jo-Di's employees.

It is undisputed that Laws failed to submit monthly reports of the hours worked by Jo-Di employees to the Union, as required by § 7 of the CBA.  It is also not disputed that Jo-Di did not make contributions to the Benefit Funds for its employees, as required by that same section of the CBA.  Accordingly, § 7 declares that Laws "shall be responsible" for the payment of contributions to the Benefit Funds.

Laws makes essentially four arguments in opposition.  It contends that § 7 of the CBA is not applicable since that provision only applies to subcontractors working <u>on</u> the job

14

site; that § 6 of the CBA does not apply either since that provision only applies to subcontractors and Jo-Di was not a subcontractor; that in any event the Plaintiffs have a duty to identify the specific drivers for whom the benefit contributions are intended; and finally, that it is illegal to make payments to benefit funds on behalf of non-union employees.  None of these arguments succeed.

Laws is correct that § 7 of the CBA refers to subcontractors working on the job site.  Specifically, it applies to "any subcontracted work on the site, or work subcontracted by or through a subcontractor on the site."  Laws emphasizes that its own employees loaded the trucks driven by Jo-Di, and that the Jo-Di drivers then drove away from the job site.  The distinction that Laws seeks to make between work on and off the job site does not absolve it of its obligations under § 7.  The hauling of debris from the job site is "work on the site."  The debris was on the job site, and Jo-Di's drivers had to drive onto the job site to pick up and remove that debris from the job site.  Laws has provided no evidence to raise a question of fact regarding this issue.

Laws's second argument assumes that § 7 of the CBA does not apply to Jo-Di's work.  In that event, Laws recognizes that § 6 of the CBA also imposed a duty of notice and potentially of payment on Laws for work performed by others.  Laws contends,

however, that § 6 does not require it to contribute to the Benefit Funds for Jo-Di's employees because § 6 only applies to Laws's subcontractors and Jo-Di was not a subcontractor.  For the reasons already explained, the relationship between Laws and Jo-Di qualifies under the broad definition of a subcontract.  In any event, even if Jo-Di did not perform duties for Laws as a subcontractor, § 6 still imposed a duty on Laws to notify the Benefit Funds about Jo-Di's trucks on a weekly basis and imposed on Laws responsibility for Jo-Di's failure to pay wages and benefits that were no less favorable than those contained in the CBA.

Section 6 of the CBA seeks to provide the "maximum employment" for union workers covered by the industry-wide collective bargaining unit for this work.  As such, it regulates how many trucks an employer is free to sell as "idle" trucks, and the circumstances under which the employer can hire "outside trucks or equipment."  As described above, when the employer uses outside trucks or equipment, it must notify the Benefit Funds "on a weekly basis", and "may be responsible" for the outside trucker's failure to pay wages and benefits "no less favorable" than those required by the CBA.  This provision is clearly designed to discourage employment of non-union, cheaper labor for work encompassed by the collective bargaining unit. Section 6 is not restricted, as Laws suggests, to work done by

subcontractors.  By its terms it applies to any outside trucks
or equipment that Laws might hire.  It is undisputed that Jo-Di
employees drove "trucks" within the jurisdiction of Local 282,
and therefore their services are covered by the CBA.  Other
courts also have similarly construed this CBA to cover trucking
and hauling.  See, e.g., King v. Audax Constr. Corp., No. 02
Civ. 582(SLT), 2007 WL 2582103, at *1 n.2 (E.D.N.Y. Sept. 5,
2007).  In sum, under either § 6 or § 7, and whether Jo-Di is
considered a subcontractor or not, Laws had a duty to give
notice to either the Benefit Funds or the Union and is required
to make payments to the Benefit Funds given the failure to
provide such notice.

Laws next argues that the Plaintiffs must identify each Jo-
Di employee by name in order to prevail on this summary judgment
motion because it is possible that the employees were paid all
appropriate wages and benefits.  Under the CBA, it was Laws's
duty to report either to the Union or the Benefit Funds the
number of "trucks supplied and the hours of work involved for
each truck" pursuant to § 6 or "all hours worked for each
Employee" for a subcontractor's employees pursuant to § 7.  This
notice mechanism would have allowed the Union to verify and
enforce Laws's compliance with the wage and benefits
requirements contemporaneously, as envisioned by the CBA.  In

17

circumstances like those presented here, the Second Circuit has stated:

> Appellant presented no evidence at the damages hearing that it notified the Union of its employment of outside drivers. Appellant cannot, accordingly, invoke the protection of the . . . CBA provision [stating that an employer becomes responsible for compliance two days after the Union notifies the employer that a truck supplier or subcontractor is noncompliant], and the district court did not err in crediting the auditor's testimony that appellant owed contributions for these employees' work.

Brown v. C. Volante Corp., 194 F.3d 351, 357 (2d Cir. 1999).

It being Laws's failure to notify the Union of the work performed by Jo-Di that made verification impossible, the burden of demonstrating that Jo-Di employees were appropriately compensated or that all appropriate benefits were paid on their behalf may not be placed on the Union or the Benefit Funds. Rather, Laws was in the position in opposing this motion to take third-party discovery to demonstrate that Jo-Di's employees were compensated as required under the CBA. In fact, the defendant sought an extension of the discovery period to take third-party document discovery and depositions on August 16, and the request was granted. Laws chose not to take any third-party discovery and has not shown that Jo-Di employees were appropriately compensated. In the absence of such evidence, the Plaintiffs are entitled to summary judgment.

Finally, Laws argues that making contributions to the Benefits Funds on behalf of the hours worked by non-union employees is illegal.  "Section 302(a) of the [Labor Management Relations Act, 29 U.S.C. § 186] makes it unlawful as a general matter for employers to provide payments to union affiliated representatives and entities, including union establish ERISA funds, beyond narrowly prescribed exceptions set out in § 302(c)."  Fairfield Cnty. Sprinkler Co., 243 F.3d at 116; see also Walsh v. Schlecht, 429 U.S. 401, 403 (1977).  Thus, the Benefit Funds may only recover if one of the statutory exceptions in 29 U.S.C. § 186(c) applies.

The Plaintiffs identify § 186(c)(5) as the exception that allows them to recover the benefits contributions at issue. That exception "operates to permit employer payments to union trust funds" if the "detailed basis on which such payments are to be made is specified in a written agreement with the employer" and

> such payments are held in trust for the purpose of paying . . . for the benefit of [the] employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance.

19

Fairfield Cnty. Sprinkler Co., 243 F.3d at 117 (quoting § 186(c)(5)).

When the exception contained in § 186(c)(5) applies, an employer must make benefits contributions for all workers covered by the collective bargaining agreement, whether or not all the employees are members of the union. See Diduck, 974 F.2d at 274-75. Thus, an employer may be required to contribute to benefit funds based on the hours worked by non-union employees even though those workers may not benefit from the benefit funds. Walsh, 429 U.S. at 404-05; Ill. Conference of Teamsters & Employers Welfare Fund v. Mrowicki, 44 F.3d 451, 461 (7th Cir. 1994); La Barbera v. J.D. Collyer Equip. Corp., No. 98 Civ. 3818(DRH), 2001 U.S. Dist. LEXIS 25315, at *12 (E.D.N.Y. May 16, 2001).

Fairfield County Sprinkler Company, 243 F.3d 112, on which Laws relies, is inapposite. In that case, the employer was not a signatory to a current CBA and employed no union members, so the employer's contributions would have violated § 186. Id. at 117-18. Laws, on the other hand, is a signatory to a CBA and employs members of the union who do benefit from the Benefit Funds.

D. Damages

Because judgment in favor of the Benefit Funds is awarded, the Plaintiffs are entitled to several items of relief.

20

Pursuant to the terms of the Trust Agreement and 29 U.S.C.

§ 1132(g)(2), the Plaintiffs "shall" be awarded

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>      (i) interest on the unpaid
>      contributions, or
>      (ii) liquidated damages provided for
>      under the plan in an amount not in
>      excess of 20 percent (or such higher
>      percentage as may be permitted under
>      Federal or State law) of the amount
>      determined by the court under
>      subparagraph (A),
> (D) reasonable attorney's fees and costs of
> the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as
> the court deems appropriate.
>
> For purposes of this paragraph, interest on
> unpaid contributions shall be determined by
> using the rate provided under the plan, or,
> if none, the rate prescribed under section
> 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

1. Unpaid Contributions and Interest

The audit shows the total unpaid contributions amount to be

$54,091.51.  The interest rate defined in the Trust Agreement is

1.5% per month of each monthly amount due for each month.  That

amounts to 18% per year.  As of the date of the audit, the

interest due was $19,703.58.  Pursuant to § 1132(g)(2)(C), the

Plaintiffs are entitled to the same amount in additional

interest, making the total interest amount $39,407.16.  The

Plaintiffs also seek interest and additional statutory interest

from the date of the audit to the date of judgment.  The audit was completed on September 21, 2009, which was 457 days ago. The Plaintiffs are entitled to interest through the date of judgment.  Using a per diem interest rate of $26.68[9], which when doubled pursuant to § 1132(g)(2)(C), is $53.35, the Plaintiffs are entitled $24,381.19 for the 457 days between the audit and judgment.  The total amount encompassed by §1132(A)-(C) is $117,879.86.

Laws's objection to the payment of interest and additional interest is merely that it is a shakedown.  The interest rate is listed in the Trust Agreement, which is expressly incorporated into the CBA signed by Laws.  The statute states that interest and additional interest "shall" be paid at the rates given in the plan.  The double interest is a "form of liquidated damages" instituted to compensate benefit funds for "the loss occasioned or costs incurred as the result of an employer's failure to make required contributions."  Diduck, 974 F.2d at 285.  Laws was on notice of the interest rate and that interest would be due.

### 2. Attorney's Fees

Where, as here, judgment is entered in the fiduciary's favor in a suit to enforce 29 U.S.C. § 1145, awarding fees and

---

[9] This number is calculated by dividing 18% annual interest by 365 days, and multiplying the result by the contributions due, $54,091.51.

costs pursuant to 29 U.S.C. § 1132(g)(2) is mandatory.[10]  See
Labarbera v. Clestra Hauserman, Inc., 369 F.3d 224, 226 (2d Cir.
2004).  The Plaintiffs seek an award of $50,129 in attorney's
fees.  Laws objects that this is excessive given that the audit
uncovered a deficiency of at most $54,091.51.

To determine the amount of a prevailing party's fee award,
a court first calculates the "presumptively reasonable fee."
Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of
Albany, 493 F.3d 110, 111 (2d Cir. 2007), amended on other
grounds, 522 F.3d 182 (2d Cir. 2008) ("Arbor Hill").  The focus
of the inquiry is on "a reasonable hourly rate, taking account
of all case-specific variables."  Id. at 117; see also Simmons
v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).[11]

_____

[10] Laws opposes the attorney's fees request based on a five-
factor test used to determine whether, in a court's discretion,
fees should be awarded under 29 U.S.C. § 1332(g)(1).  That
provision relates to "any action under this subchapter (other
than an action described in paragraph (2))."  29 U.S.C.
§ 1132(g)(1).  This action, however, is an action described in
§1132(g)(2), because it is brought by a fiduciary to enforce 29
U.S.C. § 1145.

[11] Among the factors that Arbor Hill counsels the district court
to consider are: "the complexity and difficulty of the case, the
available expertise and capacity of the client's other counsel
(if any), the resources required to prosecute the case
effectively . . ., the timing demands of the case, whether the
attorney had an interest  . . . in achieving the ends of the
litigation or initiated the representation himself, whether the
attorney was initially acting pro bono . . . , and other returns
(such as reputation, etc.) the attorney expected from the
representation."  Arbor Hill, 493 F.3d at 112.  The Second
Circuit has also counseled district court to consider the twelve

"The presumptively reasonable fee boils down to 'what a reasonable paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons, 575 F.3d at 174 (quoting Arbor Hill, 493 F.3d at 112, 118).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "Applications for award of fees must be documented by time records," and such records should be "contemporaneously created" and should "specify, for each attorney, the date, the hours expended, and the nature of the work done." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (citation omitted); see also Scott v. City of New York, ___ F.3d ___, Nos. 09-3943-CV, 09-5232-CV, 2010 WL 4869766, at *2-3 (2d Cir. Dec. 1, 2010). "[C]ounsel . . . [are] not required to record in great detail how each minute of [their] time was expended," but "counsel should identify the general subject matter of [their] time expenditures." Hensley, 461 U.S. 424, 437 n.12 (1983). The Plaintiffs have supported their application with contemporaneous time records, organized by attorney and then by date, which

---

"Johnson factors" enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). See Arbor Hill, 493 F.3d at 114 n.3 (listing the twelve factors).

describe the tasks performed and the number of hours expended in tenth-of-an-hour increments.

The defendant does not object to the hourly rates requested for either of the two attorneys who worked on this litigation. According to the Plaintiffs, their hourly fees of $390 per hour and $280 per hour have been the agreed-upon rate between the Plaintiffs and their law firm since February 2007.  According to the Plaintiffs, the fee amount reflects the deletion of hours billed by four partners and one associate on this matter because each of them billed fewer than four hours.  It also reflects a ten percent discount for the fees incurred between February 1, 2009 and January 31, 2010.  The fees are the amounts actually billed to Plaintiffs.

Having reviewed the Plaintiffs' fee application, the hourly rates are reasonable.  See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc., 246 F.3d 142, 151 (2d Cir. 2001) ("The actual billing arrangement [used] certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded.").  The law firm representing the Plaintiffs organized its staffing of the litigation to minimize duplicative work and inefficiencies.  The work was primarily performed by an associate, with the partner participating for a far smaller number of hours.  Thus, the "reasonable hourly rate[s]" used for

calculating the fee award are those rates included in the Plaintiffs' fee application.  Arbor Hill, 493 F.3d at 114.

Laws objects to the total amount of the attorney's fee award on the ground that the number of hours is excessive based on the extent of work necessary to litigate this case.  Laws does not identify, however, any individual time entries that it believes to be unnecessary or excessive, or any task that was unnecessary or inefficiently performed.  A review of the Plaintiffs' request does not suggest that it should be reduced because of excessive, redundant, or unnecessary time spent on this audit and litigation.

In determining whether the claimed hours were reasonably expended, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  Bliven, 579 F.3d at 213 (citation omitted).  "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  The Plaintiffs' request appears reasonable under this standard.

Finally, Laws points out that the construction industry is suffering from the weak economic environment and argues that it

26

did not act in bad faith in failing to make the payments to the Benefit Funds.  Even after the "presumptively reasonable fee" is established, the final fee award may be adjusted downward based on the relative financial strength of the parties.  "[F]ee awards are at bottom an equitable matter, and courts should not hesitate to take the relative wealth of the parties into account."  Toliver v. Cnty. of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) (applying 42 U.S.C. § 1988) (citation omitted). While a fee award may be adjusted based on equitable considerations, Laws has not presented any evidence of its own financial condition to justify a reduction on that ground.  As for its relative culpability, the largest portion of the deficiency is due to its failure to give contemporaneous notice to the Benefit Funds of its employment of Jo-Di.  There is, therefore, no compelling equitable ground for reducing the award of the attorney's fees.

The Plaintiffs have also applied for costs related to the audit and the litigation, and have provided records supporting the amounts of their costs.  The defendant does not object to the Plaintiffs' request for costs.  The Plaintiffs seek $3,392.64 in for the audit, which is the amount charged by the accounting firm for performing the audit.  The Trust Agreement states that the employer is liable for the auditor's fees as part of the remedy for non-payment of contributions.  The

Plaintiffs also seek litigation costs in the amount of
$1,338.96, consisting of a filing fee, postage fees, a service
fee, and discovery and research fees.  This amount is reasonable
and shall be awarded.

CONCLUSION

The Plaintiffs' November 5 summary judgment motion is
granted.  The Plaintiffs shall submit a proposed judgment by
December 28, 2010.


SO ORDERED.

Dated:      New York, New York
            December 22, 2010


                              _____
                                      DENISE COTE
                              United States District Judge

28